Pierson v. David et al.

| Iowa. | |
|---|---|
| 1 | 23 |
| 79 | 377 |
| 1 | 23 |
| 111 | 466 |
| 1 | 23 |
| 136 | 518 |

## PIERSON v. DAVID et al.

A person seized and possessed of a claim upon the public lands, on which he has made improvements, and to which he has a pre-emption right, who sells the same, owns such an estate, and sells such an interest in the land, as entitles him to enforce his lien as a vendor thereof, against such land when purchased from the United States; and all persons who purchase from the

vendee under the contract, with a knowledge of the contract, take the property subject to the rights of the vendor.

Where the bill alleges that upon the strength of the pre-emption right of the complainant, the defendants, or those under whom they claim title, were allowed and enabled to enter said lands, by the general government, the defendants are estopped from denying the title of the complainant.

The sale of a claim or improvement upon the public lands, is not illegal, and by such sale a pre-emptor does not forfeit his pre-emption right.

Where the defendants to a bill in equity, all derive their titles from a common source, are all charged with combination and fraud, and are all interested in the subject matter of the suit, there is no misjoinder of parties, although as to portions of the realty, the titles of some of the defendants may be distinct.

Where, upon the case stated in the bill, the complainant, by reason of lapse of time, or *laches* on his part, is not entitled to relief, the defendant may demur.

In a bill to enforce a vendor's lien, against subsequent purchasers with notice, it is not necessary to aver that the purchase money cannot be realized from the party with whom the contract of sale was made.

The design of sections 2094, 2095 and 2068 of the Code, was to place the vendor and vendee of real estate in the same position, so far as related to the remedy, as the mortgagor and mortgagee in cases of express mortgages.

As the mortgagee could proceed at once against the mortgaged premises, without resorting to, or exhausting the personal property of the mortgagor, or averring his insolvency, so the vendee of real estate is to be treated as having in effect given a mortgage, and his rights are to be foreclosed in the same manner.

Where a decree of a District Court, sustaining a demurrer to a bill in chancery, is reversed in the Supreme Court, that court will not retain, and make a final disposition of the cause; but will remand the cause for further proceedings in the District Court.

By the provisions of the Code, appeals are contemplated from intermediate orders in all civil causes, and proceedings on the trial in chief, in the District Court, are not necessarily delayed by such appeals.

An appeal from an interlocutory order of the District Court, does not divest that court of its jurisdiction as to the cause in chief.

*Appeal from the Des Moines District Court.*

ON the 29th of August, 1854, Pierson filed his bill in Chancery in the Des Moines District Court, against John S. David, A. D. Green, and the heirs of James Cameron, deceased. The averments in the bill, are substantially as follows: On the 13th of August, 1838, complainant was seized, possessed of, and had an equitable interest in a certain "claim" or "claims" on the public lands, on which he had

made valuable improvements, and to which he had a pre-emption right. After setting forth the boundaries of said premises, complainant avers that they are now designated as the west half of the southwest quarter of section thirty-two, in township seventy, range two; and the west half of the southwest quarter of section six, in township sixty-nine, range two. On the said 13th of August, by contract in writing, he sold his interest in said premises to one Amoriah W. Wilson, for the consideration of fifteen hundred dollars, to be paid as soon as Wilson entered the premises, which agreement was filed for record in the proper recorder's office, on the 9th of December, 1838. A copy of the contract is attached to, and made a part of the petition, from which it appears, that if Wilson did not pay the purchase money, then the premises were to revert to complainant. It was further stipulated, that if Wilson, so soon as the said claim came into market, paid Pierson four hundred dollars, then Wilson was to have a certain portion of the land, which is described by metes and bounds in said contract. On the failure of Wilson to pay any portion of the purchase money, then Pierson was to pay him two hundred dollars for any improvements he might make, when Wilson restored Pierson the possession. The complainant further avers, that Wilson never entered said premises, and never intended to do so. That on the 11th of April, 1839, with intent to defraud complainant, Wilson sold the premises first described, to John S. David and James Cameron, for the nominal sum of one hundred and fifty dollars; that, on the 11th of March, 1839, with the same intention, he sold the other parcel to said David, for one hundred dollars; that he immediately left the country, and went to parts unknown; and that he never paid any part of the fifteen hundred dollars. The complainant charges David and Cameron with notice of the contract, and Wilson's non-payment of the purchase money; that it was a lien on the premises, and that they, about the time of their purchase, and subsequently, promised to pay and discharge said lien. He avers the non-payment by them, and charges them with having combined with Wilson, to cheat

and defraud complainant; and that by their combined action, they did cheat and defraud him out of said premises and the purchase money. That David and Cameron, by virtue of the pre-emption right, so obtained from complainant, did enter said lands and obtain a patent therefor; that said Cameron has since deceased; and that the premises are in the possession of, and claimed by said David, A. D. Green (who is alleged to have purchased the interest of William C. Cameron, one of the heirs of said deceased, with notice of petitioner's claim), Selina Cameron and others, heirs of said decedent. The said sum of fifteen hundred dollars with its interest, is claimed to be an equitable lien on said land. Under these averments, the petitioner prays that said defendants may be decreed to pay said purchase money and the interest thereon—that said lands may be sold to pay the same—and also for general relief. Wilson is not made a party.

On the 28th of February, 1855, the defendants appeared, and demurred to the bill, and for causes alleged: 1. That complainants claim was barred by the statute of limitations; 2. That petitioner could, by law, only have had a pre-emption right to one of said tracts of land, and which one is not designated; 3. That the contract set up is illegal; 4. That petitioner, if he had any pre-emption right, forfeited the same by his sale to Wilson, and any reserved rights under said contract were void; 5. A misjoinder of parties; 6. That there is no showing that the purchase money cannot be made from said Wilson; 7. The want of equity generally. On the 10th of May, 1855, this demurrer was sustained, the bill dismissed, and the defendants discharged. From this ruling, the complainant now appeals to this court.

*James Green,* for appellant, argued, that the court below erred: 1. In deciding that the vendor's lien could not be enforced under the circumstances set forth in the bill. *Tredgill* v. *Pintard,* 12 How. (U. S.) 36; 4 Kent, 152; 1 Hilliard on Mort. 463; 20 Ohio, 464; Morris, 280, 367, 460.

2. In deciding that complainant's claim was barred by lapse of time. Stat. of Michigan, 570; 1 Story's Com. § 1520; Code, §§ 1671, 1672. And that the same could be taken advantage of by demurrer. 1 Morris, 321; 2 G. Greene, 183. 3. In deciding the contract between Pierson and Wilson illegal. *Hill* v. *Smith*, Morris, 70; *Freeman* v. *Holliday*, Morris, 80; *Stannard* v. *McCarty*, Morris, 124; Ib. 438; 2 G. Greene, 250; Code, §§ 1197, 1198; 12 How. 36. And whether there be improvements, is immaterial. *Chambers* v. *Games*, 2 G. Greene, 320; *Wilson* v. *Webster*, Morris, 312: *Zickafose* v. *Hulick*, Ib. 175. 4. In deciding that the bill is multifarious. Code, § 1678; Story's Eq. Plead. 233, 341. 5. In rendering a decree dismissing the bill. 7. And that in chancery cases, by appeal, the District Court is ousted of its jurisdiction, and a final decree should be entered in the Supreme Court. Const. art. 5, sec. 3; *Austin* v. *Carpenter*, 2 G. Greene, 134; *Stockwell* v. *David*, 1 Ib. 115; *Wright* v. *Marsh et al.*, 2 Ib. 107; *Chapman* v. *Morgan*, 2 Ib. 374; Code, § 1991.

*M. D. Browning*, for the appellees.

WRIGHT, C. J.—This is an application to enforce what is technically termed a vendor's lien. Under our law, where so much strictness is required, with regard to placing on the appropriate records evidences of liens and incumbrances, it would seem that in the absence of fraud, courts should be careful in the recognition of this lien. And yet, there is much of good conscience, equity, and natural justice, in providing that the vendor shall not be regarded as having lost all dominion over his property, until he is paid the agreed price. This lien or trust, though formerly objected to, as being in contravention of the policy of the statute of frauds, and for other reasons, is now firmly established. Its necessity is, indeed, too apparent—the beneficial consequences too clear—and its equitable existence too well sustained—to need now either authority or reason to prove its origin or design.

The first question to which we shall direct our attention then, is, did the complainant, at the time of making the contract referred to in his petition, own such an estate, and sell such an interest, as that he can enforce his lien as a vendor thereof, against the lands, when purchased from the general government? The courts of this state have, by an uniform course of decisions, given a strength, and certain degree of legal dignity to these "claims," "improvements," or "pre-emption titles," that it is difficult, if not improper, to disregard them. As early as the year 1840, it was held by the territorial Supreme Court, that such improvements were the subject of contract, and afforded a good consideration, as the foundation for collecting the contract price. And, in the same case, it was further held, that the act of Congress of March 3d, 1809, did not prohibit the sale of improvements on the public lands, in such manner as to render all such contracts illegal. *Hill* v. *Smith and others*, Morris, 70. The same doctrine was substantially recognized afterward, in the cases of *Freeman* v. *Holliday*, Ib. 80; *Stannard et al.* v. *McCarty*, Ib. 124; *Zickafose* v. *Hulick*, Ib. 175; *Wilson* v. *Webster*, Ib. 312; and other cases that might be cited. This doctrine is fully sustained by the courts of other states, where these "claims" have existed. Indeed, the legislation of our own, as well as all the western states, has constantly recognized such "claims" and "improvements," and, by various provisions, protected and guarded the rights of the occupants. Nor can it be said, that the liberal legislation of Congress has militated against the current of such state legislation and decisions.

Our courts have, however, gone still further in recognizing these claims. In the case of *Marshall and Whitesides* v. *Bush*, Morris, 275 (afterwards approved in the Supreme Court of the United States, see 6 Howard, 284), it was held, that where A. has a pre-emption right to a lot of land belonging to the United States, sells the same to B., and takes a mortgage to secure the payment of the consideration money; if B. afterwards purchased the same lands from the United States at public auction, and thus prevents A. from

Pierson v. David et al.

obtaining the title, so as to fulfill his engagement, he, B.; cannot set up his title from the United States, in bar to the foreclosure of the mortgage. The same doctrine is recognized in the case of *Warburton and others* v. *Mattox and others*, Ib. 367; and is even stronger, as it does not appear in that case, that the settler ever had a pre-emption right. The existence of these equitable, as well as legal rights, is also fully shown in the cases of *McCoy* v. *Hughes*, 1 G. Greene, 370; *Doolittle* v. *Bridgman*, Ib. 265; *Ellis* v. *Mosier*, 2 Ib. 246; *Doyle et al.* v. *Knapp*, 3 Scammon, 337; *Bush* v. *Marshall and another*, 6 Howard, 284; *O'Farrell* v. *Davis*, decided at the last term of this court.

But notwithstanding the principle recognized in these cases, it is claimed that none of them go to the extent of recognizing the right of the vendor of a claim, or pre-emption right, in the absence of an express mortgage, to a lien on the land, subsequent to the obtaining of the patent. This vendor's lien, it must be borne in mind, however, is an equitable mortgage, and does not contemplate any writing to evidence it. A trust estate is created by the contract, whereby the purchaser becomes the trustee, and the vendor the *cestui que trust.* The payment is a part of the contract, and upon this, and the ground of good conscience, this equitable trust rests. This equitable lien, it is admitted, follows the property sold into the hands of the heirs, and even future vendees with notice. The authorities and text books speak of it, as applied to both freehold and copyhold estates, and even as applied to such "pre-emption" rights, as is set up in this bill. See 2 Sugden on Vendors, 57, and authorities hereafter cited. To our minds, we are free to say, it appears anomalous that the vendor of such a claim can follow the lands after the vendee has procured the government title, and enforce his lien. And but for the strong tendency of the cases above cited in our own state, and a decision made by the Supreme Court of the United States, which is entirely conclusive on this subject, we should not so hold. We allude to the case of *Thredgill, Admr. of Goodlove* v. *Pintard*, 12 Howard, 24.

That case is, in many respects, similar to the one at bar, so far as shown by the petition. It appears that under the act of April 12th, 1814, one Jane Mathews claimed a right of pre-emption to certain tracts of land lying south of the Arkansas River. She assigned her right to one Tunstal, who entered and paid for the land, July 24th, 1834, and obtained a patent certificate. This purchase was, however, in 1838, annulled by the commissioner of the general land office, for the reason that the Indian title to the lands had not been extinguished when the settlement was made. This Indian title, it appears, was extinguished subsequent to settlement. Tunstal sold to Pintard, who took possession, made improvements, and resided thereon. Pintard sold in 1835 to one Rhodes, for eight thousand dollars, payable in one and two years. Rhodes sold to Goodlove, and in that purchase, " Goodlove agreed to pay Pintard the amount of his claim, so soon as a regular title to the premises should be obtained." Goodlove, in 1839, proved a pre-emption in his own name, paid in his money, and obtained a patent. On his contract with Rhodes, he had, prior to this, paid Pintard some nineteen hundred dollars; but having obtained the title in his own name, he refused to pay any further, on the ground that Pintard's claim was void. Pintard thereupon brought suit to collect the amount due him on his sale to Rhodes, with a prayer that the land might be sold to discharge the balance due to him. The Circuit Court for the district of Arkansas, decreed in favor of Pintard, and that the land should stand charged with the payment of the money so found due. And this decree the Supreme Court affirmed. In all essential particulars, this case is in point. Pierson, in his petition, alleges that he had a pre-emption right, which he sold to Wilson, for a price to be paid when the land was entered. The evidence of this contract was in writing, and recorded. Besides this notice to Wilson's vendees, he avers that they had full notice; and as in the case above cited, Goodlove had promised to pay Pintard (the vendor) the amount of his claim against the land; so this petition avers, that David and Cameron promised to pay the

amount due petitioner from Wilson. He also avers, that these vendees of Wilson, by virtue of the pre-emption right so acquired from petitioner, did enter said land and obtain a patent. And indeed, throughout, the parallel is quite perfect. We see no distinction in the two cases. The principle is announced by the highest judicial tribunal of the land, and we feel justified in following it. It is upon a question novel in its character to our minds, and one upon which but little light can be gathered from direct authorities. Justice McLean enters into no argument to show the reason of the rule; and, therefore, it was doubtless regarded as strictly analogous to the uniform decisions with regard to vendors' liens.

Pierson, in this case, then had an interest in these premises, which was the subject of transfer, and when sold, he had a right to his lien on the land for the money. See, as to the character of this pre-emption right or estate, *Bush* v. *Marshall and another*, 6 Howard, 284.

This view disposes substantially of many of the points made by this demurrer, but we will now proceed to examine them more in detail. It is claimed, that petitioner could only have had a pre-emption right to one tract of land, and he does not aver which that was. If the lands were contiguous, or part of one entire claim, what was there to prevent his pre-empting both pieces as one claim? But he avers that defendants, upon the strength of his pre-emption right, were allowed and enabled to pre-empt this land. If so (and the demurrer admits it), then they are estopped from saying that his title was bad, for that reason, in the absence of fraud. *O'Farrell* v. *Davis*, above cited. The third and fourth causes are disposed of by the doctrine laid down in the case above referred to, in 12 Howard. It is there held, that such sales are not illegal, and that Pierson did not forfeit his claim to be compensated for his pre-emption right. The fifth cause, we do not think well taken. The plaintiff claims against defendants, who have a common interest in the subject matter of the bill, and while David purchased at one time, and David and Cameron at another, and though their titles might be distinct, still it is proper to make them all

parties.   Story's Equity Pleadings, §§ 284, 285.   And especially is this true, where the charge of fraud is the same and applies to all.   § 285 *a;* also, § 271.   The parties are all interested in the subject matter.   David owns one parcel individually, and the other jointly with the other defendants; they all derive their title from a common source; David, and the testator of the other defendants, are charged with combination and fraud; and according to the rules of equity practice, it is not improper that they should all be joined.

The question arising on the statute of limitations, will next be examined.   And here the appellant claims, that this defence cannot be set up by demurrer, but must be pleaded.   The decision of this case does not necessarily involve this question, but as it is urged, we will dispose of it.   We think the rule is now well established, that where upon the case stated in the bill, the complainant, by reason of lapse of time, and *laches* on his part, is not entitled to relief, the defendant may demur.   The rule was formerly otherwise, and was so laid down by Lord Thurlow, in the case of *Deloraine* v. *Browne,* 3 Bro. Ch. Rep. 646.   And this rule was followed for some time afterwards.   If this defence was founded alone on the presumption of payment, arising from lapse of time, then, a the demurrer admits the bill, and thereby admits the debt to be still due, it would seem correct to raise it alone by plea. But a court of equity requires parties to be diligent in the assertion of their claims, as well as good faith; and if either is wanting, it will withhold its aid.   And upon this basis, Lord Redesdale, in the case of *Hovenden* v. *Annesly,* 2 Sch. & Lefr. 638, says : "If the case of the plaintiff as stated in the bill, will not entitle him to a decree, the judgment of the court may be required, whether the defendant ought to be compelled to answer the bill."   And the Supreme Court of the United States, in the case of *Weaxwell* v. *Kennedy et al.,* 8 Howard, 310, held, that this is the true rule, and that it applies with equal force to a case barred by lapse of time, as to one barred by the statute of limitation.   See also, *Piatt* v. *Vattier,* 9 Pet. 416 ; *Bowman et al.* v. *Walter et al.,* 1 Howard,

189; *Smith* v. *Cavil*, 3 Brown's Ch. 362; 1 Story's Eq. Pleadings, §§ 751, 484, 503. In section 484, it is expressly laid down, that where the bill states a case within the statute of limitations, the objection may be taken as a defence by demurrer; and that if the plaintiff be within any exception of the statute, it is his duty to state it in his bill.

The question then remains, does this bill show affirmatively that this complainant, for this reason, is not entitled to relief? We do not propose, at this time, to examine how far courts of equity are governed by statute of limitations, especially as applied to trust estates, nor whether, in this case, there is such a continuing, direct and technical trust, as distinguished from those cases in which there is a legal as well as an equitable remedy, as will take it out of the statute. The question as to how far courts of chancery act in obedience to this statute, will be found open to much controversy; and as it is not necessary to decide it now in this case, we pass it until it shall be presented. The objection, in order to be made by demurrer, must appear affirmatively, as already shown. Story's Eq. Pl. section 484, and authorities there cited. This bill does not show, however, that six years had elapsed from the time of the maturing of the demand to the bringing of the suit. It is averred, that Wilson was to pay the money when he entered the land, and that Cameron and David promised to pay this sum, about the time of their purchase and subsequently. These averments are admitted by the demurrer. It is not shown but that this land was entered, and these promises made, within one year or one day before the filing of the bill. The want of this definitiveness, may make the pleading subject to the charge of uncertainty, but for the purposes of this question, that can make no difference. All the authorities will show, that it is only where the true time is raised by the bill, that a demurrer will reach the objection. The bar does not appear affirmatively, and the demurrer for this cause, is overruled.

One question only remains, and that is, should the complainant aver that the purchase money cannot be made from Wilson? We think not. We are aware that much

conflict will be found in the authorities, as to the necessity of averring and showing the insolvency of the vendee, before this equitable lien against the land can be enforced. Our Code, we think, however, removes all doubt on this subject. Sections 2094 and 2095 provide that the vendor of real estate, when all or any part of the purchase money remains unpaid, when due, may file his bill requiring the purchaser to perform his contract, or to foreclose and sell his interest in the property; and that the vendee in such cases, for the purpose of the foreclosure, shall be treated as a mortgagor of the purchased property, and his rights may be foreclosed in a similar manner. Then section 2086 of the same chapter provides: "If separate suits are brought on the bond or note, and on the mortgage (speaking of express mortgages) given to secure it, the plaintiff must elect which to prosecute." The design of these sections was, as we regard it, to place the vendor and vendee in the same position, so far as related to the remedy, as the mortgagor and mortgagee, in cases of express mortgages. The necessity of notice to a subsequent purchaser, of course, is not changed, nor the liabilities of parties under their contracts; but as, under the laws, the mortgagee could proceed at once against the mortgaged premises, without exhausting or resorting to the personal property of the mortgagor, or averring his insolvency, so the vendee is to be treated as having in effect given a mortgage, become a mortgagor, and his rights are to be foreclosed in the same manner. And we see no reason why the rule should be changed, where the rights of subsequent purchasers of the same property, with notice, intervene. Especially where, as in this case, they are charged with having had full notice, and to have combined with the original vendee to cheat and defraud the vendor out of the purchase money. They virtually take the property, having notice, subject to the same rights to foreclose, as if they had been original vendees or mortgagors. If any other rule was to prevail, then the whole object and equity of the vendor's lien might be defeated by a transfer by the vendee to

Pierson v. David et al.

a third person, be it ever so fraudulent, or the notice ever so clearly shown.

We think the court below erred in sustaining this demurrer. The cause will be remanded, with leave to the defendants to plead or answer over.

Decree reversed.

Upon the reversal of the decree of the District Court, the appellant filed a motion for a final decree in this court, on the ground that in all chancery causes, where once the appellate court obtains jurisdiction, it must finally dispose of the cause, and cannot re-invest the District Court with jurisdiction.

WRIGHT, C. J.—The motion is overruled; *First.* Because by sections 1555, 1556, 1557 and 1989 of the Code, appeals are contemplated from intermediate orders in all cases, and proceedings on the trial in chief in the District Court are not necessarily delayed. *Second.* For aught we know, the respondent did answer in the court below, and the cause may be there at issue, after the disposal of the demurrer. The demurrer and answer may be filed at the same time, and only part of the record need be brought here. Code, sections 1738, 1739 and 1976. So that, as to the cause in chief, the District Court has not been divested of its jurisdiction, and therefore this court does not have to re-invest it therewith. *Third.* No law or authority is shown to sustain this motion, and, in the absence of express provisions, we should be unwilling to deprive a party of a further hearing in such cases. *Fourth.* The order here made is in accordance with the practice of this court. *De Louis* v. *Meek,* 2 G. Greene, 55; *Austin & Spicer* v. *Carpenter,* 2 Ib. 132; *Franklin Fire Ins. Co.* v. *J. L. McClure et al.; Gilliss* v. *Mathews,* decided June term, 1854.

Motion overruled.