## USHER *v.* LIVERMORE.

In order to authorize a court of equity to treat an absolute deed as a mortgage, it is necessary to show a debt existing between the parties at the time of the transaction, and that the title to the land passed from one to the other. Where, in a suit in equity to obtain title to certain real estate, the bill alleged that the complainant purchased a claim on the land in 1840, and continued in possession until about 1850, most of the time, by himself or his tenants; that in 1846, being unable to enter the land, he caused the respondent to enter it; that this was done in order to get farther time to pay for the land; that to effect their object, the parties entered into an agreement or lease, on the 10th of October, 1846, by which the respondent leased the land to the complainant for the term of three months, and the latter agreed to pay all taxes, and a rent of ten dollars at the expiration of the term, and to yield possession, and which lease further provided, as follows: "And the said Livermore agrees, that if the said Usher shall pay the further sum of $100, in land office money, then he will make the said Usher a quit claim of said land and warrant against his own acts; all said money to be paid at the ex-

piration of this lease.   And it is expressly understood, that if either party shall not keep all the covenants aforesaid, then the above is to be forfeited;" and that the transaction was a loan of money by the complainant from the respondent, and it was agreed that the latter should enter the land and take the title in his own name, for the purpose of securing the repayment of the money; and where the answer denied that the transaction was a loan to enable the complainant to enter the land, and insisted upon the terms of the contract; *Held*, that time was of the essence of this contract; and that to give the contract any vitality, *after* the time prescribed, at least, if not before, there should be a power of enforcing it against the complainant as well as the respondent.

### *Appeal from the Jackson District Court.*

THIS is a bill in equity, to obtain title to the west half of the southwest quarter of section thirty-six in township eighty-five, north of range two, east of the fifth principal meridian.   The bill alleges that Usher purchased what was called by the early settlers, "a claim" to this land, in 1840, or thereabout, and that he continued in possession until about 1850, most of the time, by himself or his tenants.   In 1846, being unable to "enter" the land at the land office, he caused the respondent to enter it; that this was done in order to get farther time to pay for the land ; that, to effect their object, they entered into an agreement or lease, on the 10th of October, 1846, by which Livermore let the said land to Usher for the term of three months, and he agreed to pay all taxes and a rent of ten dollars at the expiration of the term, and to yield possession : " And the said Livermore agrees that if the said Usher shall pay the further sum of one hundred dollars in land office money, then he will make said Usher a quit claim deed of said land (and warrant against his own acts); all said money to be paid at the expiration of this lease ; and it is expressly understood, that if either party shall not keep all the covenants aforesaid, then the above is to be forfeited ;"—which writing is signed and sealed by the parties.   The bill alleges that the transaction was a loan of money from Livermore to Usher, and that it was agreed that L. should enter the land and take the title

in his own name, for the sole purpose of securing the repayment of the money.

The answer denies that the transaction was of the nature of a loan, to enable U. to enter the land, but says that U. represented to L. that if L. would enter the land, and give U. a contract like that above recited, U. would raise the money and pay it at the time, or the contract should be forfeited; that L. wished to use his money at the land sales, which were to take place at the next March, and as the promised time of payment suited, he consented, under the express stipulation, that if the money was not then paid, U. should forfeit all right; and that he remained in Dubuque a year or more, and then went to New York (where he resided), taking the contract with him, and leaving no attorney or agent; but says the money could have been paid to P. Smith, at the time it fell due, and he (L.) would have received it at any time while he remained in Dubuque.   L. entered the land. Zalmon Livermore is made a party, as a vendee of Martin L. The cause was submitted on the bill, answers, replication and depositions, and a decree rendered, dismissing the bill at the cost of the complainant.   The evidence is sufficiently stated in the opinion of the court.

*Clark* v. *Bissell*, for the appellant, made the following points: 1. Usher knew not where to pay the money.   2. Livermore should have rescinded the agreement.   3. Livermore acquiesced in the delay of payment.   4. Usher never abandoned, but held to his rights.   5. The proof shows a tender of the money, and demand of a deed.   6. The agreement is, in effect, a mortgage.   In support of which, they cited the following authorities: 2 Lead. Cases in Equity, 26, 33 ; *Remmington* v. *Kelley*, 6 Ohio, 447 ; *Higby* v. *Whitaker*, 8 Ohio, 198, and authorities there cited : 2 Story's Equity, §§ 771, 776, and note on pages 101 and 102 ; *Hatch* v. *Cobb*, 4 Johns. Ch. 559 ; 4 How. (Miss.) 109.

*Smith, McKinlay & Poor*, for the appellees.   The principal point relied on by defendants, is, that time was of the es-

sence of the contract, and being so, after so much delay, a court of equity will not compel a specific performance. This point is ably handled in 10 Kinne's Law Compendium, 90, and in 1 Johnson's Chancery Cases, 375, *et seq.*, to which we beg leave to refer. The case of *Benedict* v. *Lynch*, 1 Johnson's Ch. 370, is so much to the purpose, and the law so ably laid down by Chancellor KENT, that we must refer to the case in full, without making any extracts from it.

Lord Loughborough, in *Lloyd* v. *Collett*, 4 Brown's Ch. 469, argues as follows : " There is nothing of more importance, than that the ordinary contracts between man and man, which are so necessary in their intercourse with each other, should be certain and fixed, and that it should be certainly known when a man is bound, and when not. It is one thing to say, the time is so essential, that in no case in which the day has been by any means suffered to elapse, the court would relieve against it, and decree performance ; the conduct of the parties, inevitable accident, &c., might induce the court to relieve. But it is a different thing to say, the appointment of a day is to have *no effect at all*, and that it is not in the power of the parties to contract, that if the agreement is not executed at a particular time, they shall be at liberty to rescind it." Mr. Perkins, in his edition of Brown's Ch. Cases, makes the following note to the above-named case of *Lloyd* v. *Collett* : " A mistaken and very injurious practice long prevailed, from the courts of equity considering time as of no consequence, and delay as affording no impediment to decreeing specific performance of agreements. This was supposed to originate in a dictum attributed to Lord Hardwicke, in the case of *Gibson* v. *Pattison*, 1 Atk. 12, which is now proved to be totally erroneous. See 4 Ves. 689, *et seq.*, and note. The principal case (*Lloyd* v. *Collett*), seems to be one of the first in which the practice began to be corrected ; and the benefit is attributable, in a great degree, perhaps, to Lord Loughborough having detected the error in *Gibson* v. *Pattison*, which his lordship stated at length in the principal case. A note in 4 Vesey, 720, attributes the first repugnance to follow the previous stream of

authority to Sir Lloyd Kenyon, M. R." Mr. Perkins then goes on, and states the several cases that have followed the decision of *Lloyd* v. *Collett;* and that Mr. Sugden, in 5th edition of his treatise on Vendors, 324 to 349, deduces with perspicuity and ability the true principles upon which the courts now proceed: "Where a purchaser permits a long time to elapse, without evincing a fixed, marked intention to carry his contract into execution, he will be left to his remedy at law, although he may have paid part of the purchase money." 1 Sugden on Vendors (6th American, from 10th Eng. ed.), 413, § 15 ; referring to 4 Vesey, jr., 686, and 13 Vesey, jr., 225. "Nor will he be assisted by equity, where he has made frivolous objections to the title, and trifled, or shown a backwardness to perform his part of the agreement, especially if circumstances are altered. Same, referring to 1 Bro. P. C. 27 ; 5 Vin. Abr. 538 ; 4 Vesey, jr., 667 ; 5 Vesey, jr., 145 ; 9 Modern, 302 ; 4 Vesey, jr., 720.

The other cases referred to in 10 Kinne's Law Comp. 90, and 4 Brown's Ch. 469, are 4 Johnson's Ch. 560 ; 1 Younge & Collyer, 415 ; Story's Eq. § 776 ; 4 Vesey, jr., 589 and note ; 7 Vesey, jr., 265 ; 4 Brown's Ch. 497 ; 5 Vesey, 719, 736, 818 ; 2 Scho. & Lefroy, 682. We also refer to *Garretson* v. *Van Loon*, Iowa Legal Inquisitor for September, 1851, 33, decided in the Supreme Court of this state.

WOODWARD, J.—This is not a case of specific performance. The bill prays that the agreement may be declared to be a mortgage, and that Usher may be permitted to redeem, and upon paying the money, may receive the title. There are two difficulties in the way of considering the transaction as a mortgage. *First.* There was no debt in fact existing between U. and L. which we believe to be necessary, in order to enable the court to view it in the light required. *Glover* v. *Payor*, 19 Wend. 518 ; *Robinson* v. *Cropsey*, 6 Page, 480 ; *Holmes* v. *Grant*, 8 Ib. 243 ; *Brown* v. *Dewey*, 2 Barb. 28. *Secondly.* The title did not pass from U. nor from any one, through his instrumentality or for his benefit. Without this, also, it is difficult to see how the

transaction can receive the character of a mortgage. The utmost that is pretended, in regard to anything like a title, or right existing in U., is that he had a right under the pre-emption laws. A pre-emption right being something which exists under the laws of the United States, this court has recognized it as the basis of a contract. *Pierson* v. *David*, 1 Iowa, 23. But this cannot receive consideration in the present case; for it does not appear that U. had such a right. Very likely he might have had it by taking the steps required, in addition to residence; but he does not appear to have done anything to put himself in a position to claim that right. Again, if he ever had this right, it must have been lost in the four or five years' possession of the land, without perfecting the inchoate right by purchase. And last, the purchase does not appear to have been made under the pre-emption laws, in any degree or manner, but L. entered the land, in the usual way of purchase from the United States; so that he got nothing by or under any supposed pre-emption right in Usher. The case seems to be rather, a strong instance of a call on the court to *make* contracts for the parties, or perhaps, to violate them. In any view which can be taken of it, at this period of the transaction, there is a difficulty arising from the want of mutuality. Livermore holds nothing to be enforced against Usher. To give the contract any vitality, *after* the time prescribed, at least, if not before, there should be a power of enforcing it against U. as well as against L. But it is entirely one sided.

And again: it is expressly stipulated that if either party fails to perform all the covenants in the contract, it shall be forfeited. There cannot be any less meaning to this part of the agreement, than that if either party failed to perform as covenanted, his rights under the same should cease. One of the express covenants was, that of payment at the time named; and it is not the province of the court, to change the contract of parties; it must be as they made it. This is not a case to which can be applied the assumed rule, that time is not of the essence of the contract. If this be a rule of law, or of courts of equity, it is one that has a very

limited meaning, and is to be taken carefully. It. means that time simply—that time merely, *as such,* is not. And even with this restriction, whenever this rule has been applied to the question of time *alone,* it has been where the lapse of time was small; where there has been merely a non-compliance at the day; whilst, on the other hand, the cases are numerous, in which this rule has not been applied; or, in other words, which have not been held to come within it. This rule has never been applied, it is believed, where the lapse of time has been long, and when there has been neglect. What is a long time, in this connection, has not been, and cannot well be, defined. This point amounts to this: that when the precise time has been omitted by accident, chance, or misfortune, and the party has shown himself ready and desirous to perform at the earliest day under the circumstances, the precise time shall not be held vital. But if the case shows dilatoriness, neglect, or want of care in performing, the party is not entitled to relief. And why should he be? There can be found in equity, no principle which professes to serve the negligent. And then when the party is relieved, even on the ground above stated, it can be only in a case when full compensation can be made, when both parties can be placed in as good a condition as before, and when there has been no change of circumstances. No law and no case, permits one to lay by and wait his own time and leisure, to determine whether he will perform or not, and then claim and enforce a performance, if things favor it, or throw up the contract, if he so chooses. See 1 Story's Eq. Jur., § 771, and note on page 101, 102; Leading Cases in Eq. 26; *Benedict* v. *Lynch,* 1 Johns. Ch. 370; *Hatch* v. *Cobb,* 4 Ib. 559; *Remmington* v. *Kelley,* 6 and 7 Ohio, 447; *Higby* v. *Whitaker,* 8 Ib. 198; *Williams* v. *Champion et al.,* 6 and 7 Ib. 78; *S. C.* in 6 Ham. 169; *Voorhees* v. *De Meyer,* 2 Barb. 37; *Lloyd* v. *Collett,* 4 Brown's Ch. 469, Parker's edition, note to this case; Sugden on Vendors, 5 ed. 324, 349, and in 6 Amer. Ed. 413, § 15; 10 Kinne's Law Comp. 90; *Garretson* v. *Van Loon,* Iowa Leg. Inq. Sept. 1851.

This is hardly a case to which these remarks apply, and yet the point is urged in it. And assuming the contract to be one to which such remarks would be fully applicable, let us look at the facts. The first and important fact is, that Usher did not pay at the time agreed upon. Now, what is shown to excuse him; to relieve him from the *contract?* He does not *pretend* to have *tried* to pay until in the year 1848 (what precise time is not stated), somewhere from one to two years after his contract expired. It is difficult to find a principle of equity which should relieve him from the effect of this delay, when no pretense of a reason is offered for it. At that time, he went to pay the money to P. Smith, as agent or attorney of Livermore; but Smith had not the papers, and had no authority to give a receipt or a deed, and declined taking the money. It is to be remembered, that the respondent states that the money could have been paid to Smith, *when it fell due,* and it is proved that respondent remained in Dubuque a year or more after the making of the contract, when he returned to New York; and he says, that he then took the papers with him. From this time, 1848, down to January, 1854, the complainant's argument seems to be, that Livermore was not a resident of the state, and he did not know where to find him. He ascertained his address, however, as he supposed, and caused a letter to be written him once, in 1849 or 1850. This reason covers about six years from the attempt to pay the money to Smith, and seven or more from the maturity of the contract. Is it enough? We do not think it is.

But there are other facts. On the part of complainant, it is shown, that during this time, L. had said to a third person that he did not want the land, if he could get his money and interest. Such declarations do not seem to amount to anything which a court can lay hold of, unless they are brought into connection with some further contract, or arrangement between the parties. On the other side, it is shown, that in the spring of 1853, when one Hunting thought of buying the land, he said to Usher that he had heard that he (U.) had given up all idea of redeeming the

Usher v. Livermore.

place; to which U. replied, that he had given up all hopes until lately; that there was a lawyer in Dubuque, who told him he could hold it; and that if Hunting did not want trouble, to let the place alone.

Alanson and Abraham Livermore both testify, that about August, 1853, Usher came to the house of the said Alanson, and saw the respondent, Martin L. there, and told him that " he (U.) did not want the land ; there was not enough for him and his boys; they had been out West, and liked the country, and wanted to go out there; and if defendant could sell the place for enough to make him a present, if it was but a small one, he should be glad." After this, in January, 1854, Usher makes a formal tender of the money, and demands a deed, which is declined. This is seven years after the money fell due, by the terms of the contract. Then, if Usher had had any title to the land, which he conveyed to Livermore, to which a right of redemption might attach ; and if this were a contract opening to a question of performance; and if the case were free from the question of an abandonment, it would be difficult to recognize any right remaining in Usher. And still more difficult is it, taking the foregoing facts into view, showing an unexcused delay, if not a voluntary neglect. See *Stephenson* v. *Thompson*, 13 Ill. 186; *Perry* v. *McHenry*, Ib. 227.

The judgment of the District Court is affirmed.

WRIGHT, C. J.—I concur in the conclusion, that the judgment of the court below should be affirmed. I do not understand, however, that the rule, that time is not treated by courts of equity, as of the essence of the contract in actions for specific performance, is an *assumed* one, or of the limited application suggested in the above opinion. And therefore, in so much of the opinion as relates to that subject, I do not wish to be understood as concurring.