## HASBROOK *vs.* PADDOCK.

In the interpretation of a contract, and for the purpose of ascertaining the intentions of the parties, it is allowable for the court to resort to the extrinsic circumstances which surround the transaction, and thus to place itself in the situation of the contracting parties, whose language it is called upon to construe.

The diversion or use of a *part* of a lot leased by the superintendent of the Onondaga salt springs for the manufacture of salt, for other purposes,—e. g. the erection of dwelling houses, barns, &c.—will not work a forfeiture of the premises to the people of this state.

The statute declaring that the diversion or use of salt-lots, for other purposes than the manufacture of salt, shall work a forfeiture of the estate of the lessee, and divest him of his interest therein, does not apply to the diversion of a *part* of a lot. It only prohibits the diversion and use of *an entire* lot, for purposes foreign to the object of the lease.

A party to an agreement for the exchange of lands, for leasehold premises, will not be permitted to repudiate the contract, after having enjoyed the leasehold premises

assigned to him, for years, without disturbance, and after the other party has expended large sums in improvements upon the land received in exchange by him; on the ground that a legal forfeiture had been incurred by such other party, previous to the exchange, which has given to the lessors a right to re-enter into the leasehold premises; especially in a case where such forfeiture, if any, had occurred by means of the use of the land for a purpose, and in a manner, known to the objecting party, and by virtue of a public law of which he was bound to take notice.

Although a legal forfeiture has been incurred by the lessee of land belonging to the state, which gives to the people the right to re-enter, yet the lessee has an interest in the lease until the forfeiture is enforced, and a contingent right to a new lease, in case the people think it proper to waive the forfeiture and to grant a renewal.

Such an interest in land will be protected by a court of equity; and a specific performance will be enforced in relation to it.

It is a maxim of equity, that what has been agreed to be done, and what ought to be done, shall, for the advancement of justice, be regarded as done.

Neither the making of a contract for the exchange of parts of lots held under a lease from the superintendent of the Onondaga salt springs, nor the execution of a conveyance of such parts, by the lessee, will work a forfeiture of the premises, to the people; although such contract and conveyance are in general terms, and contain no restriction upon the grantee, as to the manner in which the premises are to be occupied and used.

Statutes creating penalties or forfeitures are to receive a strict construction. And it is no part of the duty of courts to extend the meaning of the words and phrases employed by the legislature.

In Equity. This was an appeal by the defendant from a decree of the late vice chancellor of the seventh circuit. The bill was filed in the court of chancery, to compel the specific performance of a contract for the exchange of lands situated in the village of Liverpool, in the county of Onondaga. The agreement was made about the first of May, 1836, and provided for the conveyance by the plaintiff Hasbrook, to the defendant H. Paddock, of certain parts of two salt lots, in exchange for a village lot, and such a sum as should be determined to be the fair difference in value, by appraisers agreed upon by the parties. The parties to the contract soon afterwards exchanged possession of the premises, in pursuance of the stipulations contained in it, and the plaintiff has, from time to time, made valuable and permanent improvements upon the premises thus contracted to be conveyed to him. The defendant stated, in his answer, that the parts of lots agreed to be exchanged with

him, by the plaintiff, were, at the time of making such agreement, and had before then been diverted and used for other purposes than making salt; which they insisted was a violation of the statutes of this state, passed in relation to the Onondaga salt reservation, and a breach of the lease under which the lots were held. And they averred that the plaintiff had built, or was interested in building, a house and barn, and other erections, on the lots, for other uses than the making of salt. And they insisted that by reason of such diversion, the interest of the plaintiff became forfeited, and was revested in the people of the state. The cause was heard before the vice chancellor upon pleadings and proofs, and he made a decree directing a specific performance of the contract by the defendant.

Several grounds of defence were relied upon before the vice chancellor, which were abandoned upon the appeal. On the argument in this court, the defendant's counsel objected to the performance of the contract, upon the following grounds: That the plaintiff had no title to, or interest in, the premises which he contracted to convey ; that the contract was illegal and void; and that if it was not, its performance would now be contrary to the existing law, and would itself work a forfeiture of the premises, to the people of the state.

*G. F. Comstock*, for the appellant.

*J. R. Lawrence*, for the respondent.

GRIDLEY, J.  If the contract is to be understood as calling for any thing more than a *leasehold interest* of the premises agreed to be conveyed by the plaintiff, then it is quite clear that he did not possess such a title or interest as he agreed to convey ; for, the *title* to these lands is *inalienable* in the people, by the fundamental law of the state.  (*Const. art.* 7, § 10.) (*a*) But such is not the fair construction of the agreement.  In the interpretation of a contract, and for the purpose of ascertaining

(*a*) See also 1 *R. S.* 252, § 1, (3*d ed. p.* 284.)

the intention of the parties to it, it is allowable to resort to the *extrinsic circumstances* which surround the transaction, and thus to place ourselves in the situation of the contracting parties whose language we are called upon to construe. (2 *Cowen & Hill's Notes to Phil. Ev. p.* 1399, *note* 957. *See also Greenl. Ev. p.* 327.) Now, it was perfectly understood by the defendant in this cause, that the plaintiff neither had, nor professed to have, any thing more than the statutory leasehold interest in these salt lots, with such right of renewal as that interest would confer. The estate which the lessee possessed in lots of this description, was notorious to both parties; and they must be regarded as contracting with reference to that interest, and nothing beyond it. It also appears that when the deed prepared by the plaintiff under the contract, purporting to convey only a leasehold interest, was shown to the defendant, he made no objection to it on that account; thus affirming the construction which the plaintiff had given it. The defendant also insists, that when the contract was made, the former lease had expired, that the plaintiff had no absolute right to a new lease, and that it does not *now* appear that he was entitled to a renewal under the act. (1 *R. S.* 346, *2d ed.*) The answer to this suggestion is, that the officer, whose duty it was to determine that question between the plaintiff and the state, has decided it in *his* favor, and has actually granted a new lease for a term extending to 1859.

II. It is further argued, that by virtue of the provisions of the act of 1829, (1 *R. S.* 346,) by the diversion of a part of the lots in question to the uses of a dwelling house, barn, shed, &c., and *from* the business of the manufacture of salt, *the same had become forfeited to the people,* and therefore the plaintiff had no interest in the premises, capable of being conveyed.

To this, I would answer, (1.) That this very question was submitted to Chief Justice Beardsley, in 1838, then being attorney general of the state. And his opinion is expressed in a communication made to the senate, (*Senate Doc. vol* 2, *No.* 60,) that *such diversion* and *use* of a *part* of a salt lot did not work a forfeiture of the lease. I perceive no reason to question the

Hasbrook v. Paddock.

soundness of this opinion. (2.) If, however, this was a mistaken opinion, and a diversion of the premises in question from the business of manufacturing salt, *did* work a legal forfeiture of the lease, still this consequence was produced by means of a use of the lot, which was well known to the defendant, and by virtue of a public law, of which he was bound to take notice. It would therefore be inequitable to permit the defendant to repudiate the contract, after having enjoyed the premises assigned to him by the agreement, without disturbance, for years, and after the plaintiff had expended large sums in permanent improvements upon the lot contracted to him, and which the defendant is now seeking to reclaim. Although a legal forfeiture had been incurred, which gave the people a right to re-enter, yet the plaintiff still had an interest in the lease until the forfeiture should be enforced, and a contingent right to a new lease, which the people *might* grant, electing to waive the forfeiture. This turned out to be a *valuable interest ;* for the lease was in fact renewed, the act, subjecting the lot to a forfeiture, (if any such act had been committed,) having been *waived and forgiven.* That *such interest in lands* will be protected by the court of chancery, and that a specific performance will be enforced in relation to them, see *Armour* v. *Alexander,* (10 *Paige,* 573,) and *Phyfe* v. *Wardell,* (5 *Id.* 279 ;) where the subject of these contingent interests in lands, and such as depend merely on the good will of those who hold the paramount title, is fully discussed.

III. A more plausible objection to the relief sought by the bill in this cause, arises under the provisions of the act of 1838. (*Laws of* 1838, *p.* 289.) By the third section of that act it is enacted, that " *Hereafter,* any *underletting, diversion* or *use,* for any other purpose than the manufacture of salt, of any of the lots that have been or may be leased by the superintendent of the Onondaga salt springs, to any person or corporation, for said manufacture, shall *work a forfeiture of the leasehold estate, and absolutely divest the lessee, or tenant, of all his interest therein.*" Now the argument arising under this provision, against the claim of the plaintiff to have this agreement performed, is this;

Hasbrook *v.* Paddock.

that the use of the premises in question for purposes other than the manufacture of salt, since the passage of the act of 1838, has worked a forfeiture of the leasehold estate, so that the plaintiff cannot convey any interest in the premises to the defendant; and that the execution of the conveyance will itself be a direct violation of the act. It is my opinion that this argument furnishes no answer to the plaintiff's claim to relief; because (1.) The contract was made, possession taken under it, by the respective parties, and large outlays were made by the plaintiff upon the lot of which he now asks a conveyance, nearly two years before the passage of the act in question. The rights of the parties, therefore, should be deemed fixed, and should be now adjudged, as they existed before the enactment of the law under which the forfeiture is alleged to have been incurred. If the forfeiture has been incurred since 1838, it has been incurred by *the act of the defendant himself.* The plaintiff is no more responsible for the forfeiture under *that act,* than if he had been an utter stranger to the whole transaction. Nor would the rights of the parties be at all affected, if it were conceded that the conveying the premises to the defendant would now work the forfeiture created by the act. For he alone is chargeable with the delay in the performance of the contract which is now made an objection to its completion. In the year 1837, and long before the act of 1838 was passed, the plaintiff was ready, and demanded an execution of the conveyance, which was declined by the defendant. Now it is a maxim of equity, that what has been *agreed* to be done, and what *ought* to be done, shall, for the advancement of justice, be regarded *as* done. (1 *Story's Eq. Jur.* §§ 64, 69.) Equity will therefore consider this deed of the premises bargained by the plaintiff to the defendant, as having been made when it should have been, and would have been, had it not been for the culpable neglect of the defendant. Equity will not allow him to gain an advantage by his own inexcusable laches; but will adjudge the rights of the parties, as it would have done had the contract been fully performed and consummated a year before the act was passed. There is, therefore, not the slightest ground for visit-

Hasbrook *v.* Paddock.

ing upon the plaintiff the consequences of any illegal use of the premises, under the act of 1838 ; for the plain reason that the defendant himself has incurred the forfeiture, and must alone endure its burden.   (2.) I do not think that the act of making the conveyance in pursuance of the contract, nor even the making of the contract itself, would work a forfeiture of the premises, under the most stringent construction of the statute.   There is no provision in the contract or deed which requires, or contemplates, the use of the premises for any illegal purpose ; and it certainly should not be presumed that the defendant intended to use them in an unlawful manner.   If, however, it turns out that the purpose for which he designed to occupy them, *has become unlawful,* he will doubtless alter his purpose and put them to a lawful use.   (3.) In the case of *Williams* ads. *Marks,* the supreme court has recently held that the diversion of an *entire lot,* and an appropriation of it to the purposes of keeping a tavern, worked a forfeiture of the lease, under the act of 1838.   Without intending to question the authority of that decision, I am nevertheless of the opinion that the case under consideration is not one of those cases which are subjected to forfeiture by the act.   I need not stop to cite authorities to show that acts creating penalties and forfeitures are to receive a *strict* construction.   The statute does not, either in express terms, or by a fair implication, apply to a *part* of a salt-lot.   It only speaks of the *use* and *diversion* from the business of manufacturing salt, of *a whole lot.*   The facts disclosed by the evidence show very satisfactory reasons why the legislature might well prohibit a *whole* lot from being occupied for a purpose foreign to the object of the lease ; and at the same time allow *parts* of lots to be used for dwelling houses, barns, &c.   It appears by the proofs in the cause, that these salt lots are of considerable depth, running entirely across the street called *Salt-street,* or *Brow-street ;* and that such portions of the lots as lie *below* this street are used solely for the *actual manufacture of salt,* while the parts lying above *Brow-street* and between that and *First-street,* are usually appropriated to dwellings, out-houses and gardens.   In this way, the upper parts of these lots, though

Hasbrook *v.* Paddock.

not *actually occupied as salt blocks*, are nevertheless subservient and auxiliary to the general business of the salt manufacture. Dwelling houses for the proprietors and their families, and boarding and lodging houses for the accommodation of the workmen, situated near their place of labor, are certainly convenient, if not indispensable, to a successful prosecution of the business. This consideration alone is enough to show a sufficient reason why the legislature were unwilling to require the *whole* of these lots to be *literally* occupied with salt blocks, and to visit with the penalty of forfeiture such parts of them as had been covered with houses and used in business other than the *actual* manufacture of salt. Such an enactment would have been not only inexpedient, but cruelly oppressive and unjust. And I repeat, that until the legislature has explicitly declared their intention to forfeit parts of lots, it is no part of the duty of courts, in the construction of a penal statute, to extend the meaning of words and phrases which the lawmakers have chosen to employ. I do not think it necessary to add more, except to refer to the able opinion of the vice chancellor who decided this case in the court below. He has given an accurate survey of the legislation upon the subject of the salt manufacture, and an interesting and instructive history of the operations of these laws; and of the large and important interests that have grown up under the former administration of them in the village of Liverpool, and has shown the dangerous consequences to those interests if such a construction should be given to the act of 1838, as is claimed for it by the defendant's counsel.

For these reasons the decree appealed from must be affirmed, with costs.