## STRONG *et al. vs.* GREGORY.

1. In the construction of written instruments, the intention of the parties must govern, and to ascertain that intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view.

2. An ante-nuptial contract was entered into between a woman and her intended husband, by which it was agreed, that after the marriage had been solemnized, a certain portion of the slaves and other property, which the wife had in possession and in remainder, should be settled and secured by some good and sufficient conveyance, upon a trustee for the use and behoof of the wife during the term of her natural life, with a provision in the settlement, that the property thus conveyed might be changed, sold and resold, or the whole trust annulled, whenever the husband and wife should jointly agree to do so. It was also thereby agreed, that the residue of the slaves which the wife had should be conveyed to the trustee for the use of the wife, until the husband should direct them to be sold, and when sold, the proceeds to be paid to the husband. *Held,* 1st, that it was the manifest intention of the parties, that the wife should take a *separate* estate in that portion of the property which was to be conveyed to the trustee "for her use and benefit during the term of her natural life."

2. That the power given to the husband and wife, to annul the trust by their consent, does not subject the property to his debts.

3. That the husband, during his wife's life, does not take such an interest in the remainder, after the determination of her life estate, as is subject to levy and sale at law.

ERROR to the Chancery Court of Butler. Tried before the Hon. J. W. Lesesne.

THE bill shows that complainant, Susan Gregory, before her intermarriage, was possessed of ninety-two slaves in the State of Georgia, and also of a quantity of stock, farming utensils, &c; also, to the remainder in several tracts of land, and other slaves in which Mary Ingram had an estate for life. That intending to intermarry with Ossian Gregory, her husband, they entered into an agreement in writing, which described the slaves and other property, and recited that the marriage was shortly to be solemnized, and by which they covenanted and agreed in case the marriage should take place, by some good and sufficient conveyance to settle and secure sixty-one of the slaves, of which the complainant was then possessed, and also the stock and provisions on hand, together with the property to which she was entitled in remainder, on one James A. Nesbit, to the use and behoof of the complainant during the term of her natural life. Said settlement, however, to contain a provision, that the property might be changed, sold and re-sold, or the whole trust annulled, whenever the said Ossian and the said complainant should jointly agree to do so, and as to the other slaves, of which the complainant was possessed, it was agreed that the said Ossian and Susan, his intended wife, would likewise settle and secure them to the said Nesbit for the use of the said complainant, until the said Ossian should direct them to be sold, and when sold, the proceeds were to be paid over to the said Ossian. It is further shown by the bill, that the said Ossian at the time of the marriage was insolvent and largely indebted, and that the object of the agreement was to give to the complainant a separate estate in all the property, except the slaves which were to be sold by the order of Ossian Gregory.

The bill further alleges that the marriage was consummated, and the slaves sold, which were liable to be sold under the order of Ossian Gregory; and with the consent of Nesbit, the complainant and her husband removed to Alabama, and brought the sixty-one slaves with them, which were to be conveyed to Nesbit, for the use and behoof of complainant. It is further shown, that the creditors of Ossian Gregory sued him in Alabama, and obtained judgments, some of whom have levied executions on the slaves, and others are threatening to do it, and that the trustee had interposed his claim to the property levied on. The bill also states, that by mistake of the attorney, Mr.

Poe, who was employed to draw up the agreement, he omitted to use such words as would show clearly, that it was the intention of the parties to settle the property on the complainant for her sole and separate use, and prays a reformation of the agreement in this respect. An injunction is also prayed against the creditors of Ossian Gregory, who are made parties to the bill, and for general relief.

The several answers of the creditors deny that there was any mistake in drawing up the agreement, and insist that the property is liable to the satisfaction of their debts.

WATTS & ELMORE, for the plaintiff.

WILLIAMS, contra:

DARGAN, C. J.—In the construction of instruments perfect and complete within themselves, and which require no further act to be done to define and ascertain the rights of the parties, before we can exclude the marital rights of the husband, it must plainly and distinctly appear, that such was the intention of the grantor.—Lamb. v. Wragg & Stewart, 8 Por.; Dunn and Wife v. The Bank of Mobile, 2 Ala. 152 ; Oneal v. Teague, 8 Ala. 345 ; Pollard v. Merrill & Exemir, 15 Ala. 169. The mere vesting of the legal title in a trustee for the use of a woman, whether sole or married, will not ordinarily have the effect of giving her a separate estate in the trust, free from the marital rights of her husband. Thus in the case of Lamb v. Wragg & Stewart, supra, a father conveyed slaves to his son-in-law, in trust for his wife, (the daughter of the grantor,) and the question was, whether the wife took a separate estate in the slaves. This court held that she did not. In the case of Lamb v. Milnes, 5 Vesey, jr., 521, the master of the rolls held that the marital rights of the husband were not excluded by vesting the legal title in a trustee, for the benefit of the wife.—See also, Kensington v. Dallard, 7 Con. Eng. Ch. 322. But as it is the intention of the parties executing the instrument that must govern in determining whether a separate estate is executed in favor of the wife, we must look to the nature of the instrument, and the condition of the parties executing it, in arriving at that intention; for no particular form of words is indispensably requisite to create a separate estate in favor of a married woman,—

Strong et al. v. Gregory.

(Bright on Husband and Wife, vol. 2, 211; Stanton v. Hall, 6 Con. Eng. Ch. 445;) and it is said that in construing instruments that are executory in their character, and which require some further act to be done to define and settle the rights of the parties, a court of equity will indulge in a wider range of interpretation for the purpose of arriving at the intention.—2 Story's Equity, vol. 2, § 983. Yet it must be admitted, that it is the intention that must govern in determining whether a separate estate is given to a married woman or not, whether the agreement be complete or executory. But it does not follow that the same words are to receive the same construction in every instrument, or rather, the same intention is not always evinced in every instrument by the use of the same words. But we must look to the condition of the parties, the objects they had in view, and to the entire instrument itself, to arrive at a just and proper conclusion as to their intentions, and when we are entirely convinced from these sources what were the intentions of the parties, we must give effect to such intentions, notwithstanding the same words might be differently construed in other instruments. Thus it may be admitted, that if property be conveyed to a trustee for the use of a married woman, the marital rights of the husband will not be excluded, because it does not appear that such was the intention of the grantor. But in the case before us, all the property at the time of executing the agreement belonged to the complainant, who was then a single woman. She and her intended husband before the marriage stipulated, that after the marriage should have been solemnized, they would, by some good and sufficient conveyance, settle a part of the property on a trustee, for the use and behoof of the complainant, and another portion on the same trustee, for the benefit of the intended husband. Now I ask, who can doubt that it was the intention of the parties, that the intended wife should take an interest in that portion of the property to be settled on the trustee for her use? If such were not their intentions, and they intended the husband to take the whole, why settle one part on the trustee for the use of the intended husband, and another part for the use of the wife? It is too plain I think, to admit of doubt, that it was the intention, that the wife should take an interest, and we can only carry into effect this intention by giving her a separate estate. The language of the agreement is, that it (the property) should

be settled on the trustee " *to the use and behoof of the complainant,*" and this settlement was to be executed by the husband and wife after their intermarriage. How can it be settled to her use and behoof, unless we give her a separate estate? This we must do, or we will allow her no interest or rights in the property whatever; and thus, the manifest intention of the parties will be frustrated. To be for her use, it must be for her *separate* use. The parties have agreed before their marriage, to settle a portion of the wife's property on a trustee after they should be married, for the use of the wife; this can only be done by giving her a separate estate in the property, and this we must do, or we should hold the agreement to be nugatory, and by construction destroy it, instead of carrying into effect.

This view renders it unnecessary to examine whether or not there was a mistake or an omission in drawing up the agreement; for as it stands, we are bound to hold, that it gives her a separate estate in that portion of the property, which she and her intended husband agreed should be settled on James A. Nesbit for her use and behoof.

2. But it is contended that the power given to the husband and wife by their joint consent to annul the trust, vests the entire property in the husband. To this argument we cannot assent. It is true, that if the husband had the power of disposition of the whole for his own benefit, such a power might subject the property to sale in satisfaction of his debts, as being inconsistent with a separate estate in favor of the wife. But without her consent no part of it can be sold, nor the trusts annulled; and until that consent is given, her rights remain unimpaired, and neither the husband nor his creditors can take them from her.

3. It is also insisted, that the wife takes but a life estate in the property in any event, and the remainder belongs *to her husband,* which is the subject of levy and sale at law. We do not deem it necessary to decide whether the husband is entitled to the remainder after the death of the wife, in opposition to the issue of the marriage; for it is clear, that to carry out the intentions of the parties to the agreement, the legal title to the whole property must be vested in a trustee. And even if the husband would be entitled to any interest after the death of his wife, it can at this time be but an equitable and not a legal interest, and, therefore not the subject of a levy and sale at law.

The trust in this case is not executed, but is still executory, and must so continue for the purpose of protecting the interest of the wife during her life, at least. The legal title to the property is held for her benefit, and the husband can have only an equitable interest in the remainder so long as the trust is executory, for until executed the legal title must be in a trustee. Without, therefore, deciding what interest, if any, the husband may have in the remainder, it is clear that he has none at this time which is the subject of levy and sale at law.

We can perceive no error in the decree, and it must be affirmed.