13  313
85  283

## McCraney's Executrix v. Griffin *et al.*

1. CONSTRUCTION OF CONTRACTS. All parts of a contract are to be weighed and considered in giving it a construction. The court in construing a contract should arrive at the intention of the parties by looking at the language employed, the purpose in view, and all the circumstances attending the contract.

2. CONSTRUCTION OF BOND FOR CONVEYANCE OF REAL ESTATE. A bond for the conveyance of real estate stated the terms and conditions substantially as follows: 1. That the vendees had made the vendor certain notes, for different sums and maturing at different dates, all bearing ten per cent interest; that accruing on two of them to be paid annually in advance. 2. That they had paid him the sum of $764, the receipt of which is acknowledged. 3. Vendees were to pay all taxes and charges that might accrue against the lots. 4. The vendor undertook, if the said notes and interest thereon should be paid on or before the time they may respectively mature, and if all the taxes should be paid, whenever called upon afterwards to convey, by deed of general warranty, the property described; but if the said notes and interest and taxes accruing were not paid, then the contract was to be void, and the vendor reserved the right to re-enter upon said premises. 5. "And I do further agree, upon payment to me of two thousand dollars to make a deed to lot number three (3) and upon payment of five hundred dollars for each lot I agree to make a deed to either or any of lots one, two, four and five, (1, 2, 4 and 5,) and upon the

payment of $290.07, for each lot, I agree to make a deed of either or any of the remaining lots above described to" said grantees " or their assigns and at their own expense." It was held:

1. That after the payment of any of the sums named in the last clause or stipulation of the contract, the vendees or their assignees might elect to take the proper specific lot or lots; and that after such election and notice thereof to the vendor he would be bound to convey; but that he would not be in default by mere payment without an election and notice.

2. That the sum paid when the contract was entered into should be estimated with those afterward paid in determining whether any one of the several amounts upon the payment of which the vendee was entitled to a conveyance, had actually been paid.

3. That the vendee having paid in the aggregate more than the sum of $2,000, but having failed to notify the vendor of his election to take a conveyance of lot three (3) before suit brought, was entitled to a conveyance upon the payment of the costs, and the taxes and charges thereon.

*Appeal from Dubuque District Court.*

Thursday, June 10.

In November, 1854, Thomas McCraney sold to Griffin and Hawthorne lots one, two, three, four, five, and thirty-three other lots in said vendor's additions to the city of Dubuque. On the 5th of January, 1855, he executed to these parties a bond, stating the terms and conditions of this sale, substantially as follows: *First.* That the vendees had made to him certain notes—(1), for $1,184.37, due in one year—(2), for $7,106.25, in ten years—(3), for $3,250, in ten years, all bearing date November 7, 1854—(4), for $764, in thirty days, of date January 5, 1855; all of said notes bearing ten per cent, the interest on the second and third to be paid annually in advance. *Second.* That they had paid him $764, the receipt of which is acknowledged. *Third.* Vendees were to pay all taxes and charges that might accrue against the lots. *Fourth.* The vendor undertook, if the said notes, and the interest thereon, should

be paid on or before the time they respectively matured, and if all the taxes should be paid; *whenever called upon afterwards* to convey, by deed of general warranty, the lots above referred to. But if the said notes, and the interest and taxes accruing, were not paid, then the contract was to be void, and the vendor reserved the right to reënter upon said premises. *Fifth.* In conclusion, there is this stipulation: "And I do further agree, upon payment to me, of two thousand dollars, to make a deed to lot No. three (3), and upon payment of $500, for each lot, I agree to make a deed of either or any of lots one, two, four and five (1, 2, 4, 5); and upon payment of $290.07 for each lot, I agree to make a deed of either or any of the remaining lots above described to said Hawthorne and Griffin, or to their assigns, and at their expense."

Hawthorne sold his interest in this contract to Jackman & Gilman. By proceedings in partition between Griffin, Jackman & Gilman, to which Hawthorne was a party, there was allotted to Griffin lot one, and twenty other lots described in said contract, and to said Jackman & Gilman those remaining, including lot three. This was in 1857.

In May, 1860, the complainant, as the executrix of the estate of Thomas McCraney, filed this bill, averring the non-payment of the note, the interest thereon, and taxes— and asking a foreclosure. After, answers were filed, a cross bill by Gilman & Jackman, and answers thereto—the cause was referred to B. W. Poor, Esq., who found and reported:

1. That there had been paid on the principal sum as follows: On or about Nov. 7, 1854, being the cash payment at the time of said purchase . . . . . . . . $764
About Feb. 5, 1855, the note at 30 days, . . . · 764
About Nov. 5, 1856, the note due in one

year, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,184 37

$2,712 37

2. And that the interest was paid on the notes for $7,-106.25 and $3,250, to Nov. 7, 1856.

3. That plaintiff was entitled to a judgment for $6,120.-45, being the amount of interest due to Nov. 4, 1861, and taxes paid by her to protect said property.

4. That under the pleadings, and by virtue of the last clause in the contract, Gilman & Jackman were entitled to a deed of lot three, as more than $2,000 of the principal sum had been paid.

5. That a demand of the deed was not necessary.

6. That a decree of foreclosure should be rendered against all the other lots (except lot three) in favor of complainant.

Other facts were also found, and other legal conclusions stated, but as they are not controverted, they need not now been recited.

Exceptions were taken to the report, by complainant, which were overruled, and a decree entered in accordance with the findings of the referee. Complainant appeals.

*Wiltse & Blatchley* for the appellant.

*C. J. Hawthorne and Burt, Angell & Lyon* for the appellee.

WRIGHT, J.—The points in controversy in this case involve a construction of the agreement of January 5, 1855, and especially the last clause thereof. Two questions arise: *First.* Was a demand necessary to entitle respondents to a deed of lot three. *Second.* In computing the amount paid upon the principal sum, to entitle them to such deed, was it proper to include the $764 paid before the execution of the bond, styled, in the agreement, the "hand money."

It is familiar law that all parts of the contract are to be weighed and considered in giving it a construction. Equally

familiar is the rule that the court shall place itself, as nearly as practicable, in the situation of the parties, and arrive at their true intention by looking at the language employed, the purpose in view, and all the circumstances attending the contract.

In this case there is an express provision that before the vendor, (after all the purchase money is paid, with the taxes to accrue,) would be in default, he shall "be called upon afterwards" to convey. A failure to make this demand would not release him from his obligation, but as he would not be in default, if the vendees had in all other respects complied with their undertaking, they would be entitled to a performance, at their own costs. This is the view of the contract, when looking to the language used, prior to the concluding clause, and upon the hypothesis there contemplated, that the *whole* purchase money and taxes should be paid and kept up. After this, however, there is a further agreement, which binds the vendor and gives to the vendees rights, in a manner and to an extent not before specified. Taking all three provisions together, what is the true construction.

In the first place, our opinion is, that the "further" clause was inserted for the benefit and convenience of the vendees. Without this, they were bound by the strict terms of the agreement to pay the entire consideration, before they could compel a conveyance of either of the lots. Such property, however, being the legitimate object of trade and speculation, as the greater part of the principal sum was not to be paid for ten years, and as by the possible advance in the value, in the meantime, of each or some of the tracts, they might, by disposing of the same, raise means to meet their agreement, this further agreement was entered into to enable them to accomplish their purpose. But suppose they paid $500, $1,000, or 2,000, or more, were they entitled, without more, to a deed to some specific

lot or lots ?    In other words, until the vendor was notified what lots they desired should be conveyed, would he be in default for not conveying?    Our construction of the contract is, that while after such sufficient payment they might elect, and after such election, and notice thereof to the vendor, he would be bound to convey; he would not be in default by the mere payment, without an election and notice.

This conclusion receives much support, in the second place, from several considerations, which may be briefly noticed.    And *first*, it will be seen that the vendees were to bear and pay the expense of such contemplated conveyances.    If so, it is a fair and natural construction that they were expected to have prepared, and present for execution, the desired conveyance.    Not, be it understood, that if they demanded a conveyance, the vendor could excuse himself because the vendees did not prepare and present the deed; but this clause or requirement tends to show that they were to be the active, and the vendor, to some extent, the passive party in the execution of the agreement.    And this thought is in harmony with the prior provision that the vendor was to make a deed when called upon.

Again, by the "further" agreement, the vendor could not know what lot was to be conveyed, until demanded.    By paying $500, for instance, the vendees were not restricted to claiming a deed to one of the lots numbered one, two, four and five, but at their election, they could require a conveyance of one of those estimated as worth $290.07.    So, when they paid $2,000, they might exact a deed for either or all of said four lots, valued at $500 each, or they might take lot No. 3.    In a word, it seems to us that the parties, after reducing their contract to writing in the usual form, then, in view of the great number of lots, the difference in their respective values, the length of time the contract had to run, and other considerations, such as the

convenience of the vendees before adverted to, affixed a schedule value upon each, and when sufficient should be paid to cover any one, a deed could be required, instead of waiting until the whole amount was paid, and the party entitled to a conveyance for all. It does not mean that just $2,000 shall be paid at one time to entitle the party to lot three. But when payments have been made which, in the aggregate, reach that sum, the vendee might demand lot three, the four valued at $500 each, or so many of those of lower value as would be thus paid for, or, as far as practicable, some of each. That lot three is first named in this concluding clause, is of but little importance. The obligation to convey this is no more imperative than any other. They all stand alike, and not until the vendor was notified what particular lot or lots he was desired to convey, would he be in default.

Respondents have, however, by their cross-bill, elected to take lot three. This they are entitled to, paying costs, if they have paid sufficient, according to the terms of the contract, to entitle them to it. And this brings us to the *second* question, whether the $764, or the "hand money," shall be estimated in making up the $2,000, which was to be paid before the deed could be demanded. And it seems to us that it should. This construction is certainly not in conflict with the language used. And while it is true that the words "upon the payment to me of $2,000," would seem to imply a subsequent payment, yet there is a consideration that to our minds is of controlling significance. This contract was made, and all its terms agreed upon, in November, 1854. Then it was that the $764 was paid. It was not reduced to writing, however, until in January, 1855. The notes for the greater part of the purchase-money had already been executed. This agreement, made in January afterwards, should be construed, in considering the question, as if made at the time of the execution of the

notes.   As thus understood, in view of the purpose and object of the parties in inserting the last clause, as before explained, we can see no good reason why vendees should not have the benefit of this payment, as well as those subsequently made.   It forms certainly a part of the consideration.   And then, if it was not intended to have been thus included, it seems to us that the matter would have been placed beyond all contingency by the use of the word "hereafter," in the second line of what is termed the "further agreement."                                         •

Upon the whole, we conclude that appellees are entitled to a deed to lot three, but that it is liable to all taxes and charges of every kind and description paid thereon by appellant, that these should be required to be paid, by a day named, and in default thereof, that it, with all the other property, should be sold to satisfy the amount found due the appellant by the court below, and that appellees should pay all costs.

The cause will, therefore, be remanded, with instructions to modify the decree accordingly.   In all other respects, the decree below will stand affirmed.