BOWERS *et al.* v. KEESECKER *et al.*

1. ESTOPPEL. In a proceeding to cancel a conveyance it will not be held as an estoppel upon the grantee in favor of the grantor, while such grantor insists that it was void and conferred no rights upon such grantee.

2. PRE-EMPTION: PERSONAL PROPERTY. Where the intestate had established his right to pre-empt a lot in the city of Dubuque, under the acts of Congress of July 2d, 1836, and March 3d, 1837, but had paid no money, nor obtained a duplicate receipt or other evidence of title to the property, it was held that he was not invested with an inheritable estate, and that his administrator had power to sell and convey the same as personalty.

3. CASE OVERRULED. *Davis* v. *O'Ferrall,* 4 G. Greene, 358, as to the right of the widow to dower in lands to which the husband had only a pre-emption right, overruled.

*Appeal from Dubuque District Court.*

MONDAY, DECEMBER 22.

IN EQUITY. Complainants are the heirs of George Lamb Bowers, who departed this life in December, 1838. The object of the bill is to set aside certain deeds made by one Snow, as administrator of the decedent's estate, to the respondents and those under whom they claim, to have said respondents declared trustees holding the lots therein

described, in trust for complainants, &c. The cause was heard before a Master on bill, answer, replication, exhibits and depositions, who made his report sustaining the bill. Respondents excepted to this report. These exceptions were held well taken in the District Court and the bill dismissed. Complainants appeal.

*McKinlay and Wiltse & Blatchley* for the appellant, cited 1 Spence Eq. Jur., 31; 2 White's Land Laws, 691; *Thredgill* v. *Pintard*, 12 How., 24; *Armour* v. *Alexander*, 10 Paige's Ch., 572; *Arnold* v. *Grimes and Chapman*, 2 Iowa, 1; *Atkins* v. *Faulkner*, 11 Id., 326; *Pierson* v. *David et al.*, 1 Id., 28, *et seq.*, 1 Lead. C. in Eq., 241; *Turney* v. *Saunders*, 4 Scam., 527; *French* v. *Carr*, 2 Gilm., 668; *Freeman* v. *Holliday*, Mor., 80; *Livingston* v. *Newkirk*, 3 John. Ch., 315; *Brush* v. *Ware et al.*, 15 Pet., 94; *Stoddard et al.* v. *Chambers*, 2 How. U. S. S. C., 285; *Hofnagle* v. *Anderson*, 7 Wheat., 212.

*Samuels, Allison & Crane* for the appellee, cited *Harrington* v. *Sharp*, 1 G. Greene, 132; *Pierson* v. *David et al.*, 1 Iowa, 28; *Stewart et al.* v. *Chadwick et al.*, 8 Id., 467; *Bowman* v. *Lorr*, 3 Id., 573; *Davenport* v. *Farrar*, 1 Scam., 317; *Brown* v. *Throckmorton*, 11 Ill., 530; *DeLanney* v. *Burnett*, 4 Gilm., 454; *Clark* v. *Shulz*, 4 Missouri, 235; *Frear* v. *Hardenbergh*, 5 John., 272; *Benedict* v. *Beebee*, 11 Id., 145; *Zickafosse* v. *Hulick*, Mor., 175; *McCoy* v. *Hughes*, 1 G. Greene, 370; *Bledsoe* v. *Carns*, 10 Tex., 455.

WRIGHT, J.— This controversy relates to certain lots in the city of Dubuque. The bill was once held to be multifarious by the District Court, which ruling was reversed by us and the cause remanded. (9 Iowa, 422.) The case is now before us upon its merits.

By the act of Congress, approved July 2, 1836 (Revision, 962), it was provided that the tract of land including

the town of Dubuque, should, under the direction of the Surveyor General, be laid off into town lots, &c. When the survey was completed, a plat was to be returned to the Secretary of the Treasury, and within six months thereafter the lots were to be offered to the highest bidder at public sale, under the direction of the President of the United States, and at such other times as he should think proper. Lots were to be divided into three classes, and prior to the sale above contemplated, each and every person who, by building or inclosure actually occupied or improved a lot, was permitted to purchase the same by paying the value fixed by the law upon the same.

This act was amended March 3, 1837 (Revision, 963), the amendatory act providing that the duties required of the Surveyor General should devolve upon a board of three commissioners. These commissioners were given power to hear evidence and determine all claims to lots under the original act. They were to file, with the proper register and receiver of the land office, the testimony in each case, together with a certificate in favor of each person having the right to pre-emption; and upon making payment to the proper receiver of public moneys for the lot to which such person was entitled, the receiver was required to grant a receipt and the register to issue a certificate of purchase to be transmitted to the Commissioner of the General Land Office, as in other cases of sales of public lands. After all cases of pre-emption were heard by the commissioner, the register and receiver were required to expose the residue of the lots to public sale to the highest bidder.

Between October 10, 1837, and August 20, 1838 (inclusive), George L. Bowers, claiming to have made improvements and be in the actual occupancy of the lots in controversy, made proof of the same before the Surveyor General and board of commissioners, and the latter, in July, August and October, 1838, recognized by their certificates

his right to his pre-emption. On the 18th of November, 1839, Snow, the administrator duly appointed, treating the interest of the decedent in these lots as personal property and not as an inheritable estate, without any order of court, sold the same to respondents and those under whom they claim. These purchasers, from September 18, 1840, to January, 1841, made their payments to the proper receiver, obtained receipts, the necessary certificates from the register, and afterwards their patent from the United States. Complainants treating the interest of their ancestor in these lots as real estate, claim that Snow had no right to sell the same without an order duly obtained from the proper probate court; that such pretended sale was void, and that the purchasers acquired no right thereunder to make payments and take title from the general government.

It is in substance admitted by respondents that if Bowers at his death had an inheritable interest in these lots, or such an interest as descended to his heirs, as real estate, then Snow had no authority to sell the same as he did On the other hand, it is admitted by complainants that if he had not an inheritable interest, their rights were divested by such sale, and they are not entitled to relief as against respondents. The question, as thus made, we shall decide without waiving thereby the weight that should be given to the action of the register and receiver in granting the receipts and certificates, and the patent founded thereon.

Upon authority, and aside from some aid drawn to complainants' case from the doctrine of estoppel, we are of the opinion that complainants' bill was properly dismissed. We then inquire, first, whether respondents are in a position to be estopped from denying complainants' title? And we remark that all of the cases in which this doctrine has been applied in connection with this character of title, differ essentially from the one before us. Thus in *Thredgill* v. *Pintard* (12 How., 24), the object of the bill was to enforce

the payment of a sum claimed to be due from the purchaser of the pre-emption right, with a prayer that the land subsequently entered might be sold to pay the same. It was held that the purchaser could not avail himself of the benefit of the contract, and at the same time resist the performance of it on his part. So in *Bush* v. *Marshall* (Morris, 275, and 6 How., 284), Whitesides sold to Bush two lots in Dubuque, the legal title being in the United States, giving a deed with covenants of general warranty. Bush gave a mortgage on the same lots to secure the unpaid balance of the purchase money. At the sale by the government, Whitesides purchased one of the lots and Bush the other. The mortgagee sought to foreclose the mortgage, and the Supreme Court (GRIER, J.,) hold that, as to the lot purchased by Whitesides, the mortgagee, the title was vested in his vendee by estoppel, and no further conveyance was necessary. And as to that purchased by Bush, he obtained possession under Whitesides, and could not, by the purchase of an outstanding title, defeat the claim of his vendor. And again, in *Pierson* v. *David* (1 Iowa, 23), the bill was a vendor's lien, the petition alleging that he had a pre-emption right and sold it to respondents, based upon which they acquired the title. That case follows *Thredgill* v. *Pintard, supra*, and as to one point recognizes the doctrine of estoppel in these words: "But he avers that defendants, upon the strength of his pre-emption right, were allowed and enabled to pre-empt this land. If so, then they are estopped from saying that his title was bad in the absence of fraud." *Davis* v. *O'Ferrall* (4 G. Greene, 358), is decided alone upon the doctrine of estoppel; for, says HALL, J., "Bissell, having entered into the premises under the deed from O'Ferrall, is estopped from denying O'Ferrall's title while he or his grantee continued that possession. The door is effectually closed against all other inquiry."

And thus it will be seen, without reference to other

cases, that the doctrine of estoppel was applied under circumstances very different from those arising in the case before us. Respondents do not claim all the benefits of a contract with the decedent or his representatives, and then resist the performance of it on their part. · They abide by the contract, and claim to have fully performed it. If the administrator had power to make it, then the controversy is at an end. If he had not, then no right was conferred, and as the estate was not estopped by it, neither were the vendees. Complainants will not be allowed to rest their case upon the ground that such sale conferred no right upon the vendees, and then insist that the vendees are thereby estopped from resisting their title or claim. The distinction is, to our mind, most clear and manifest.

Notwithstanding, then, such sale by the administrator, can complainants have the relief asked? It will be observed that the decedent had only established his right to pre-empt these lots. He had paid no money, nor obtained any duplicate receipt or other evidence of title. The substance of all that had been done then was, that he had a naked possession, made proof thereof, and had the same recognized by the commissioners. Did this invest him with such a title as to make it inheritable?

The *dominium utile*, as contradistinguished from the *dominium directum*, in the lands seized by the Romans in their conquests, differed very essentially from the right of a pre-emptor under our laws, from the fact that there, by the direct sanction of the State, such use or enjoyment was absolute, and was descendable and alienable, and might even be acquired against the State by *quasi* prescription, founded on long undisturbed possession. And hence it is spoken of as " a right which the vassal hath in the land, or some immovable thing of his lord, to use the same and take the profit thereof hereditarily or *in perpetuum.*" (1 Spence's Eq. Jur., 31 and 33.) Until by the direct sanction of the State

therefore, the possession of the pre-emptor is declared to be descendable and alienable, or until it is recognized as a right which is held hereditarily, the argument by appellants, drawn from the *dominium utile* of the feudal vassal, is entitled to no weight.

Nor is the claim that this title is inheritable because it is indeterminate entitled to more force. Under the law it may be determined. For by the act of July 2, 1836, the pre-emptor was required to make his purchase within six months from the time the plat was returned to the Secretary of the Treasury. Under the amendatory act it certainly would not be insisted that such claimant could enjoy his possession without limit as to time, and that the commissioners could not sell if the occupant failed to make his proof. The law extended to the occupants the privilege of proving up their pre-emptions. If they failed to do this, then these lots fell within the "residue," which the register and receiver were required to offer at public sale. Such right was no more indeterminate than an estate at will, or the mere license of the owner of the fee to another to occupy land for an indefinite period; and yet these certainly do not possess the dignity of an estate of inheritance.

But we are not without express adjudications upon this subject. *Davenport et al.* v. *Farrar* (1 Scam., 315), is directly in point. Says LOCKWOOD, J.: "A pre-emption interest in land is unknown to the common law. Does then a pre-emptioner, under the act of Congress, possess in law or in equity an estate of inheritance? It would seem to be sufficient merely to state the question to answer it in the negative. What is his right? It is a right to purchase at a fixed price in a limited time in preference to others. If he is either unable or unwilling to purchase at the price, or by the time mentioned in the law, the land can be sold to others and the pre-emptioner turned out of possession as an intruder. These conditions annexed to his possession

clearly show that his interest is only temporary, and may never ripen into an estate of inheritance. While, therefore, the pre-emptioner remains in possession, his estate cannot be considered of a higher nature than an estate for years, and consequently the widow cannot be endowed of it."

The case of *Harrington* v. *Sharp* (1 G. Greene, 131), was where one party held a pre-emption under the acts of Congress now under consideration. By the statutes of the State, a judgment was declared a lien on the " real estate of the person " against whom it was rendered. The question determined was whether a judgment would operate as a lien on a pre-emption right. Says GREENE, J.: " We understand by the term real estate that the fee simple or estate of inheritance must be in the person. A mere pre-emption right confers no such fee or estate." And to the same effect is *Delancey* v. *Burnett*, 4 Gilm., 454; *Clark* v. *Shultz*, 4 Mo., 235; *Brown* v. *Throckmorton*, 11 Ill., 530.

The only case to which our attention has been directed, that can be construed as holding a contrary doctrine, is that of *Davis* v. *O'Ferrall*, 4 G. Greene, 358. From the reference already made to this case, it will be seen that the dower was allowed the widow upon the ground that Bissell and those holding under him were estopped from denying the pre-emptor and vendor's title. The case was decided by a divided court, GREENE, J., dissenting. And if that case is to be treated as holding that a widow may have her dower assigned in lands to which her deceased husband had a pre-emption right merely, and which he assigned by his own conveyance, she not joining in it, we feel constrained to hold that it is not in accordance with the views we entertain of the character of the pre-emptor's claim, nor the uniform current of decisions upon this subject.

The decree is affirmed.