CORBETT, Admr., v. BERRYHILL.

29  157
79  356

1. **Contract:** CONSTRUCTION OF. In construing a contract and for the purpose of getting at the intention of the parties, their situation and all the circumstances surrounding the transaction may be considered.

2. —— RULE APPLIED: VENDOR AND VENDEE. A contract for the sale and the conveyance of an interest in certain mining property in Montana territory, after stating the fact of sale, its terms, and a description of the property, stipulated, that upon the payment of certain notes, given for the purchase money by the vendees, the vendor would execute to them "a good and sufficient deed" for the property. The title to the property afterward became lost, and the claims abandoned, by the failure of those interested therein to keep alive the same by working them in accordance with the miners' rules in that region. *Held*, it appearing, under the application of the above rule, that the parties only intended the sale and conveyance of a mere possessory right or miners' claim, that the covenant to convey contained in the contract did not amount to a warranty of title; that the vendor thereunder was only bound to execute a deed for the interest he possessed at the time of the contract; that he was not

bound to protect and keep alive his interest in the claim by having the same worked in accordance with the miners' rules ; and that the loss of the title, by reason of the failure of the vendees and others interested to thus keep it alive, constituted no defense to an action on the notes given for the purchase-money.

3. **Personalty :** CLAIM ON PUBLIC LANDS : ADMINISTRATOR. A " miners' claim," being a mere possessory right on public lands, is personalty, and may be sold and conveyed by the administrator

*Appeal from Johnson District Court.*

FRIDAY, JULY 22.

ACTION in chancery. Decree for plaintiff in accordance with the prayer of the petition. Defendant appeals. The facts of the case are fully set out in the opinion. The same case was before this court upon questions other than those now determined. See 27 Iowa, 534.

*Rush Clark* for the appellants.

*Edmonds & Ransom* for the appellee.

BECK, J.—On the first day of July, 1866, Isaac L. Allen by his attorney in fact, R. D. Stephens, executed a contract to sell and convey to defendants, Berryhill and Downey, his interest in certain mining property or claims in the territory of Montana. The following recitations are in the contract, viz. : That Allen "has this day agreed to sell to [the parties above named], all the interest in the property hereinafter described, which was conveyed to the said Allen by Charles H. Berryhill, as trustee, by deed dated 26th day of January 1866, and recorded on pages 159 and 160, book 5, records of Jefferson county, Montana territory. And whereas the said Downey and Berryhill have agreed to purchase the same, and pay therefor the sum of $4,500 to the said Allen, and have made, executed and delivered to him their

Corbett v. Berryhill.

two certain promissory notes for the purchase-money, both dated July 1, 1866, both payable in one year from date to said Isaac Allen or order, at the First National Bank of Marion, Iowa, both drawing interest, at the rate of ten per cent per annum, from date until paid, one being for $2,500 and the other for $2,000 ; and the said Allen, by his attorney aforesaid, has agreed to make, execute and deliver, to said Downey and Berryhill, a deed to said property, on the payment of said notes. Said property is described as follows : an undivided eighth part of the following property, to wit : Then a particular description of the property is given, which consists of claims on certain mining *lodes* ; the numbers and description of the claims are set out, and mention is made of certain incumbrances upon them, after which the contract closes with the following stipulation : " Now, therefore, the said Allen agrees to, and with the said Downey and Berryhill, to make them a good and sufficient deed, as aforesaid, on the payment of said notes."

The action is brought to enforce the payment of the notes executed by Berryhill and Downey under this contract, and the plaintiff prays for a decree granting him proper power and authority to convey the property described in the contract in accordance with its provisions. Prior to the commencement of the action Downey died. His administrator and widow are made defendants ; they do not join in the appeal. Allen at the commencement of the suit was under guardianship, on account of insanity ; he has since deceased, and his administrator was substituted in place of his guardian, as plaintiff. His widow is joined as a defendant. The defenses made upon this appeal have proper foundation in the answers of defendant, Berryhill, which need not be further referred to. Certain questions as to the validity of the contract, raised by defendant on a former appeal

in this court, are not now presented, having been there finally disposed of. See 27 Iowa, 534.

The evidence, it may be admiited, so far as the questions we are about to determine are concerned, establishes, that the right and title to the property held by Allen at the date of the contract has been lost since that time, and the property was abandoned by those holding it in August, 1867. In this view of the case appellant insists that the true construction of the contract requires the plaintiff to show " good title" in the representatives of Allen to the " one-eighth" of the property ; that nothing less than the conveyauce of such an interest, " with marketable title," will satisfy the covenants of the contract, and that, as, by the terms of the contract, it is *in futuro* and executory, the plaintiff must show the interest which was conveyed to him by Berryhill as a trustee was kept good by Allen and his representatives. This is the main defense to the action.

In forming a conclusion as to the true interpretation of the contract we must aim at the intention of the 1. CONTRACT: parties, which will be followed unless violence construction of. is thereby done to the rules of language or the rules of law. The construction adopted should accord with the terms of the contract as understood and adopted by the parties. *Cornwall* v. *Pumphrey*, 9 Ind. 135.

The intention of the parties may be ascertained by evidence of extrinsic circumstances which surround the transaction, the court thereby placing itself in the situation of the contracting parties whose language it is called upon to construe. The circumstances and situation of the parties thus become a medium through which their intentions may be discovered. *McCraney's Exr.* v. *Griffin*, 13 Iowa, 313 ; *Karmuller* v. *Krotz*, 18 id. 352 ; *Hasbrook* v. *Paddock*, 1 Barb. 635 ; *Brown* v. *Slater*, 16 Conn. 192 ;

*Fowle* v. *Bigelow*, 10 Mass. 379 ; *Sumner* v. *Williams*, 8 id. 214.

The objects which the parties had in view in inducing the contract are also to be considered in its construction. *Strong* v. *Gregorg*, 19 Ala. 146.

As the actions of men are usually the index of their intentions it is obvious that their acts may be proved, in connection with their contracts, in order to arrive at their true intention in regard to the obligations they assume and accept from others.

The peculiar facts and circumstancees of the transaction involved in the case before us we will briefly consider.

2. —— rule applied : vendor and vendee. Certain parties then in Montana made discovery of and located the mining claims described in the contract of Allen. A company was formed, consisting of the discoverers, and Berryhill, Downey, Allen and others, for the purpose of working the mines. The three parties named above, whose transaction is the subject of this suit, were never in Montana, and had no personal knowledge of the property.

It was conveyed to Berryhill, by the parties making the discovery or holding the title thereto, as a trustee, for the purpose of conveying to those who were or might become interested therein as members of the company. Allen became the owner of one-eighth part of the property, and a deed therefor was executed to him by Berryhill, in January, 1866. He paid for the interest conveyed to him $4,000, and afterward paid to the company, or some one acting for it, $500, which was used in expenses attendant upon the enterprise. It was the intention of the associates to work and develop the mines, and it was thought by all concerned that the investment would pay largely. The claims were held by them under the rules adopted by the miners of the territory, but no title from the United States was acquired. This seems to have been

well understood by all concerned. The company were making arrangements to work the mines, but no great amount of money appears to have been expended for that purpose prior to the date of Allen's contract. Shortly prior to that time Allen, who was in failing health, and whose mind was seriously impaired, was induced by his friends to dispose of his interest in the property. He probably set on foot some negotiations with Berryhill and Downey looking to that end, but his mental disorder increasing, he induced Stevens to accept a power of attorney, authorizing him to attend to this and other business. Thereupon Stevens opened a correspondence with them for the purpose of inducing them to buy the interest of Allen in the mining claims. At this time the title of the property was not doubted, and it was still believed to be a profitable investment. The reasons given for offering the property for sale were Allen's bad health and mental infirmities. The sum asked was the amount paid for the property by Allen. The offer was finally accepted, payment to be made in one year, with interest at ten per cent per annum. The sale was consummated by the execution of the contract by Allen, and the execution of the notes by Berryhill and Downey.

After this some expenditures were made by the company in the improvement and development of the mines, but finally, in August 1867, they were abandoned on account of the want of means on the part of the company, and of the further fact that they proved unprofitable. No effort seems to have been made to acquire the title to the lands whereon the mines are situated from the United States, and it does not appear whether, under the rules of the mines, the company kept their claims good. It is of course understood that all the operations in regard to the mines were conducted by the associated owners as a company. We have no evidence that the claims to the

mines were impaired until after their abandonment of the property in August, 1867. All who were engaged in the enterprise expected to realize profits from the property by working the mines, or by selling interest therein. It was not esteemed valuable for any other purpose. It will be remarked that the interests of the different owners were held in common, and no division of the property was actually made or contemplated.

These facts and circumstances being considered in connection with the contract, under the rules of interpretation above stated, it appears that it was not the intention of Allen to sell, nor the other parties to buy, under the contract, the fee simple title to the lands. The possessory or miner's claim was the subject of sale alone. The contract of Allen, while it did not convey the legal title of the property, undoubtedly invested Berryhill and Downey with the equitable title thereof; it in fact seems to have been a device for the sale of the property, retaining the title in the grantor, as security for the purchase-money. Can it be doubted that under this contract the purchasers were invested with full right to the enjoyment of the interest purchased? In case the enterprise had proved profitable after the execution of the contract, and large sums of money had been realized as the share of profits due to the interest conveyed by Allen, can it be pretended, that he would have been entitled to receive them? We think no court of law or equity would so hold. Unquestionably, the right of Berryhill and Downey, after their purchase, to the full enjoyment of the interest purchased was complete. That being so, Allen could not be charged with the duty of improving, developing and working the property for the purpose of protecting it. If it was lost before final abandonment, we infer from the evidence it was from the neglect of that duty on the part of those who had the care of the prop-

erty, the miners' rules and the law applicable thereto requiring the claims to be made good in that way.

We are clearly of the opinion, in view of all the circum-stances, that Allen's contract is for the conveyance of the interest he held at the time of the execution, and did not impose an obligation upon him to protect and make good the title he conveyed. If the title failed, not from any fault on his part, it is therefore no defense in an action upon the notes.

The Allen interest being undivided, would be pro-tected and the title preserved by the same acts of posses-sion and care that would preserve the interests of the other tenants in common, and the acts that would pre-serve it would protect the other interests. Now it can hardly be supposed that the contract imposed upon Allen the burden of making expenditures to preserve the property of the other members of the company, Berryhill and Downey included. If Berryhill and Downey found that their interests were so worthless that they would not be re-imbursed in making necessary expenditures to keep them, and they finally found it was necessary to abandon them, can they hold Allen responsible for an omission to do that which they found would be ruinous to them ? It would require the useless expenditure of money by Allen to preserve that which they admit was valueless.

Whatever view we take of the contract, in the light of the circumstances and situation of the parties, reveals to us no other interpretation consistent with its terms and the evident intentions of the parties, than that plaintiff is bound to convey the title and interest held by Allen, when the contract was made, without being liable for a failure thereof from any of the causes set up in the defense.

The language of the contract will scarcely admit of any other interpretation. Allen undertook to convey the

interest in the property which was conveyed to him by a certain deed. There is no express stipulation that he will warrant the title he thus acquired. His consent to convey by good and sufficient deed must be construed to require such a deed for the interest he thus undertakes to convey. On this point, see *McNear* v. *McComber*, 18 Iowa, 12 ; *Shreck* v. *Pierce*, 3 id. 350.

The appellant insists, that the heirs of Allen are necessary parties to this suit, and, as they are not joined, the **8. Personalty: claim on public lands: administrator.** court cannot authorize the plaintiff to convey the property described in the contract, and that unless the conveyance be made, as therein provided, recovery cannot be had on the notes.

As we have seen, the property described in the contract is a mere possessory right or " claim " upon public lands. Such claims are held to be personalty, and may be sold and conveyed by the administrator. *Bowers* v. *Keesecker*, 14 Iowa, 301 ; *Stewart* v. *Chadwick*, 8 id. 463. The heirs are therefore not necessary parties.

Affirmed.